## PHYLLIS E. GILLIANS *v.* YODNA VIVANCO-SMALL ET AL.
### (AC 32133)

Bishop, Harper and Peters, Js.

Argued February 15—officially released April 26, 2011

*Mark F. Katz,* for the appellant (plaintiff).

*Gregory T. D'Auria,* senior appellate counsel, with whom, on the brief, were *Richard Blumenthal,* former

attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Phyllis E. Gillians, appeals from the summary judgment rendered by the trial court in favor of the defendants[1] on her claim of intentional infliction of emotional distress arising out of the parties' employment in the Stamford office of the department of children and families (department). The plaintiff claims that the court incorrectly determined that she failed to allege sufficient extreme or outrageous conduct to sustain her claim. We affirm the judgment of the trial court.

The following factual allegations, from the plaintiff's second substituted complaint and her affidavit in support of her objection to the motion for summary judgment, are pertinent to the issues on appeal. At the time of the alleged incidents, the plaintiff was employed by the department as a social work supervisor. She also was a steward of the labor union. On September 29, 2004, in her capacity as union steward, she filed an institutional labor grievance against defendants David Williams and Kenneth Mysogland complaining that the number of cases assigned to workers exceeded the maximum limit.

The plaintiff alleges that, in retaliation for this filing, supervisors Williams and Mysogland, along with principal personnel officer Kathleen Simpson, conspired with the other named defendants to force the plaintiff to

[1] The plaintiff's second substituted complaint named the following eight defendants, all of whom were employed by the department of children and families during the relevant time period: Kenneth Mysogland, area director; David Williams, program supervisor; Kathleen Simpson, principal personnel officer; and case workers Yodna Vivanco-Small, Anastasia Kalmanides, Aracely Centeno, Karla Rivera and Aissa Williams.

withdraw the institutional grievance.[2] She alleges, as well, that the other named defendants, who were her subordinates, were motivated by personal vendettas in connection with unsuccessful complaints each previously had filed against the plaintiff and that, as part of the conspiracy, they had become hostile and uncooperative and had falsely accused her of racial and sexual bias. In her affidavit, the plaintiff asserts that while disagreements with her subordinates and supervisors were occurring, Williams, Mysogland and Simpson reviewed her entire personnel history and, for the first time, gave her a negative performance evaluation and threatened her with demotion and termination of her employment. She further alleges that certain of the defendants offered exemption from reprimand to the plaintiff's colleagues if they would agree to oppose the institutional grievance that she had filed. The plaintiff also avers that, ultimately, Williams, Mysogland and Simpson decided to terminate her employment and that, when their decision was reversed by the department, they offered to rehire her at a lower position. The complaint concludes with the allegation that the resulting distress caused her to resign and to take other employment at a greatly reduced income.

In response to the plaintiff's second substituted complaint filed on October 10, 2006, alleging intentional infliction of emotional distress,[3] the defendants, on

[2] In her affidavit, the plaintiff also adds on a cursory assertion that she was targeted because she is African-American and female. Because she fails to allege any facts to support this assertion, we do not consider it. See *Cappo* v. *Suda*, 126 Conn. App. 1, 8, 10 A.3d 560 (2011) (party opposing summary judgment "must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact" [internal quotation marks omitted]).

[3] The plaintiff also recited a second count alleging that the defendants "did maliciously cause and inflict emotional distress . . . ." In its memorandum of decision, following the parties' lead, the court treated both counts as alleging the single tort of intentional infliction of emotional distress.

November 9, 2009, filed a motion for summary judgment, claiming that the plaintiff failed to allege facts demonstrating that their actions were extreme and outrageous. The plaintiff submitted an affidavit in support of her objection to the motion alleging the facts set forth previously in this opinion. Following a hearing on the motion, the court issued a memorandum of decision on March 2, 2010, granting the defendants' motion for summary judgment on the basis of its determination that the plaintiff had failed to allege sufficient extreme or outrageous conduct to sustain her claim. This appeal followed.

We begin with the principles that govern our review. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Washington* v. *Blackmore*, 119 Conn. App. 218, 220–21, 986 A.2d 356, cert. denied, 296 Conn. 903, 991 A.2d 1104 (2010). "Our review of the trial court's

decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010).

"In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 491–92, 998 A.2d 1221 (2010). "[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 847, 888 A.2d 104 (2006).

Focusing on the second element of the tort, the trial court rendered summary judgment solely on the basis of its determination that the plaintiff had failed to allege extreme and outrageous conduct. On appeal, the plaintiff claims that the defendants' conduct was sufficiently extreme and outrageous to sustain her claim. We agree with the trial court. Although the alleged actions of the defendants, if proven, could understandably upset and distress the plaintiff, the behaviors do not meet the high threshold required to sustain a claim based on intentional infliction of emotional distress.

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually

tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) *Muniz* v. *Kravis*, 59 Conn. App. 704, 708, 757 A.2d 1207 (2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

On the basis of this standard, we conclude that the plaintiff failed to allege conduct that a reasonable fact finder could find to be extreme and outrageous. This conclusion is consistent with the decisions of this court and our Supreme Court in employment and termination of employment cases. Much of the alleged conduct involved investigation into the plaintiff's job performance, which, even if unfounded, does not satisfy the articulated standard. See, e.g., *Tracy* v. *New Milford Public Schools*, 101 Conn. App. 560, 567–70, 922 A.2d 280 (conduct not outrageous where supervisor conspired with superintendent in pattern of harassment including denial of position, initiating disciplinary actions without proper investigation, defamation of character and intimidation), cert. denied, 284 Conn. 910, 931 A.2d 935 (2007).

The most troubling allegation is that the defendants vindictively conspired to terminate the plaintiff's employment. A concerted effort to remove an employee, however, does not necessarily constitute outrageous conduct; see, e.g., *Dollard* v. *Board of Education*, 63 Conn. App. 550, 552–55, 777 A.2d 714 (2001) (conduct not outrageous where supervisors engaged in concerted and successful plan to force plaintiff to resign by hypercritically examining her professional and personal conduct, transferring her involuntarily, placing her under intensive supervision and publicly admonishing her); nor does a wrongful motivation necessarily render a termination outrageous. See *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 89, 700 A.2d 655 (1997) (mere act of terminating employee, even if wrongfully motivated, does not transgress bounds of socially tolerable behavior). Reading the allegations in the light most favorable to the plaintiff, the defendants' conduct, albeit distressing to her, did not exceed all possible bounds of decency. See, e.g., *Appleton* v. *Board of Education*, supra, 254 Conn. 210–12 (conduct not outrageous where supervisors made condescending comments about plaintiff in front of colleagues, subjected her to two psychiatric examinations, telephoned her daughter to say plaintiff was acting differently and should take time off, asked police to escort her from school and suspended her employment).

The judgment is affirmed.

In this opinion the other judges concurred.